UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| AMAL AZZAM, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 19-cv-3365 (TSC) |
| DISTRICT OF COLUMBIA, | ) ) ) | |
| Defendant. | ) ) | |

# MEMORANDUM OPINION

Plaintiff Amal Azzam is a civil engineer employed by the District of Columbia Department of Transportation (DDOT). She alleges that her employer denied her promotion opportunities based on her gender, religion, race, national origin, and age, and that it retaliated against her for complaining about the alleged discrimination. Defendant, the District of Columbia, has moved to dismiss most of her claims, arguing that she failed to timely serve the District and that she otherwise fails to state a valid claim for gender, religion, race, and national origin discrimination. For the reasons explained below, the court will GRANT IN PART and DENY IN PART Defendant's motion.

## I. BACKGROUND

Plaintiff is a 52-year-old Egyptian Muslim woman. ECF No. 15, Am. Compl. ¶¶ 1, 75. She has been employed at DDOT since 2003 and holds the title of Civil Engineer. *Id.* ¶ 12. On or about July 24, 2015, Plaintiff—a Grade 13 employee—applied for a Grade 14 Supervisory Civil Engineer position at DDOT. *Id.* ¶ 15, 26. Plaintiff alleges that the available position "involved supervision of bridge and tunnel management/ maintenance: a job that [she] currently performs and greatly enjoys." *Id.* ¶ 16. Plaintiff was not selected for the job, despite scoring

"the highest of all applicants" on DDOT's "interview and certification scoring system." *Id.* ¶¶ 18–19. According to Plaintiff, her male supervisor instead selected an unqualified male employee for the role, *id.* ¶ 19, who was neither Egyptian nor Muslim, *id.* ¶ 29. Plaintiff subsequently met with two supervisors, Deputy Director Greer Gillis and Chief Operations Manager Suzette Robinson, to seek a "correction" to the selection decision. *Id.* ¶ 21. Her supervisors "conceded" that the selected male applicant was not qualified and would be moved to another position. *Id.* ¶ 22. Plaintiff did not hear anything further from her supervisors about the selection decision. *Id.*

In October 2016, Plaintiff filed an internal grievance with DC Human Resources ("DCHR") regarding her non-selection for the 2015 position. On July 13, 2017, DCHR responded that the male applicant selected for the position was not qualified, and that "as a correction and resolution, the position would be re-posted and she would be able to reapply." *Id.* ¶ 24. For a year, Plaintiff monitored DDOT's job postings, but the Grade 14 Supervisory Civil Engineer position was not re-posted. *Id.* ¶ 25. On July 10, 2018, she inquired with DCHR and learned that in January 2018, DDOT re-posted the 2015 position, but did so as a Grade 15 position and required that applicants have at least one year of experience as a Grade 14 employee. *Id.* Because Plaintiff was a Grade 13 employee, she was not qualified for the 2018 position. *Id.* ¶¶ 25–26.

Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on August 21, 2018, alleging gender and religion discrimination. *Id.* ¶

22; *see also* ECF No. 16, Def. Mot., Ex. 1.[1]  The EEOC issued a right to sue letter on August 6, 2019.  Am. Compl. ¶ 7.

On August 14, 2019, Plaintiff applied for one of four newly available positions at DDOT but in September 2019 she learned that she was not selected.  *Id.* ¶ 32.  According to Plaintiff, each of the four selected candidates were less qualified than she was and all were under the age of 40.  *Id.* ¶¶ 35–36.  Plaintiff filed a second charge with the EEOC in May 2020 complaining about this non-selection, alleging religion, race, national origin, and age discrimination, as well as retaliation.  *Id.* ¶¶ 38–41; Ex. 3, May 12, 2020, EEOC Charge.  She received a right to sue letter dated May 26, 2020, for this charge.  *Id.* ¶ 10.

Plaintiff filed her lawsuit against DDOT *pro se* on November 7, 2019.  ECF No. 1, Compl.  She served the Office of the Attorney General for the District of Columbia with the summons and Complaint by certified mail on February 12, 2020.  *See* ECF No. 5, Return of Service/Affidavit at 3; Def. Mot, Ex. 2, Robinson Declaration.  On February 27, 2020, DDOT filed a motion to dismiss her lawsuit, arguing that DDOT is not capable of being sued.  ECF No. 4.  The court agreed with DDOT that the agency could not be sued, *see Fields v. D.C. Dep't of Corr.*, 789 F. Supp. 20, 22 (D.D.C. 1992) ("It is well established, however, that agencies and departments within the District of Columbia government are not suable as separate entities."), but found that dismissal of Plaintiff's Complaint solely on that basis was not warranted, and instead substituted the District of Columbia as the proper Defendant.  ECF No. 8.  The court also granted Plaintiff's request for a short stay to allow her time to obtain counsel, which she did on

---

[1] Plaintiff initially filed a charge on August 21, 2018, then filed an amended charge on October 18, 2018, providing her new address and a different address for DDOT.  *See* Am. Compl. ¶ 28; Def. Mot., Ex 1.

June 1, 2020. *See* Min. Order (Mar. 27, 2020); ECF No. 11. On July 7, 2020, Plaintiff filed an amended complaint, which Defendant moved to dismiss.

Plaintiff alleges that Defendant discriminated against her on the basis of her gender, religion, race, and national origin in violation of Title VII of the Civil Rights Act of 1964, by refusing to hire her for the Grade 14 Supervisory Civil Engineer position in 2015, instead hiring "a significantly less qualified male applicant who was neither Egyptian nor Muslim," and by reposting the position in 2018 as a Grade 15 position for which she could not qualify. Am. Compl. ¶¶ 44–68. She also alleges that Defendant's refusal to hire her for any of the four August 2019 positions constitutes religion, race, national origin discrimination, and retaliation for her earlier EEOC complaints, all in violation of Title VII, as well as age discrimination in violation of the Age Discrimination in Employment Act. *Id.* ¶¶ 55, 60, 65, 69–80.

Defendant argues that the court should dismiss the Amended Complaint because Plaintiff failed to timely serve the District with her original complaint under Fed. R. Civ. P. 4(m), a failure that was not cured by her filing of an amended complaint. Defendant also argues that Plaintiff's discrimination claims stemming from Defendant's 2015 hiring decision are untimely, that she has failed to state any plausible claim for gender, religion, race, or national origin discrimination, and that her retaliation claim is invalid because it is not supported by an inference of causation. Defendant did not move to dismiss Plaintiff's age discrimination claim.

## II.  LEGAL STANDARD

### A. Rule 12(b)(5)

When a defendant moves to dismiss for insufficient service of process, "[t]he plaintiff bears the burden of proving that he has effected proper service." *Jouanny v. Embassy of Fr. in the U.S.*, 220 F. Supp. 3d 34, 37 (D.D.C. 2016). "[T]o do so, [it] must demonstrate that the

procedure employed satisfied the requirements of the relevant portions of Rule 4 [governing summonses] and any other applicable provision of law." *Light v. Wolf*, 816 F.2d 746, 751 (D.C. Cir. 1987) (quoting 4A Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1083 (4th ed.)). "[U]nless the procedural requirements for effective service of process are satisfied, a court lacks authority to exercise personal jurisdiction over the defendant." *Candido v. District of Columbia*, 242 F.R.D. 151, 160 (D.D.C. 2007). As a result, "[f]ailure to effect proper service is . . . a 'fatal' jurisdictional defect, and is grounds for dismissal." *Jouanny*, 220 F. Supp. 3d at 38. The court has discretion to dismiss the claim or allow the plaintiff to correct service of process. *See Wilson v. Prudential Fin.*, 332 F. Supp. 2d 83, 89 (D.D.C. 2004).

   B. <u>Rule 12(b)(6)</u>

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim tests the legal sufficiency of a complaint. *See Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible when the factual content allows the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A plaintiff's factual allegations do not need to be "detailed," but "the Federal Rules demand more than 'an unadorned, the-defendant-unlawfully-harmed-me accusation.'" *McNair v. D.C.*, 213 F. Supp. 3d 81, 86 (D.D.C. 2016) (citing *Twombly*, 550 U.S. at 570)).

Compliance with Title VII's statute of limitations is an affirmative defense properly raised in a motion under Rule 12(b)(6). *See Greer v. Bd. of Trustees of Univ. of D.C.*, 113 F.

Supp. 3d 297, 306 (D.D.C. 2015) (citing cases). "In ruling on a motion to dismiss, the Court may consider not only the facts alleged in the complaint, but also documents attached to or incorporated by reference in the complaint and documents attached to a motion to dismiss for which no party contests authenticity." *Demissie v. Starbucks Corp. Off. & Headquarters*, 19 F. Supp. 3d 321, 324 (D.D.C. 2014). The court holds documents prepared by a *pro se* plaintiff to "less stringent standards" than legal documents drafted by an attorney. *See Gage v. Somerset Cnty.*, 369 F. Supp. 3d 252, 258 (D.D.C. 2019) (citation omitted).

### III.   ANALYSIS

#### A. <u>Service of Process</u>

Plaintiff filed her original Complaint on November 7, 2019. Compl. Accordingly, under Fed. R. Civ. P. 4(m), she had until February 5, 2020, to serve the District with a summons and copy of the Complaint. The parties agree that Plaintiff did not serve the District until February 12, 2020, seven days after the deadline. *See* Return of Service/Affidavit at 3; Def. Mot. at 3; Robinson Declaration; ECF No. 17, Pl. Opp'n at 6.

Defendant argues that because of Plaintiff's untimely service, the court should dismiss Plaintiff's lawsuit. Def. Mot. at 5–6. Plaintiff contends that in early February 2020 she was diagnosed with "pneumonia while experiencing Covid-19 like symptoms" and was too ill to effect service for at least five days. Pl. Opp'n at 5. She also argues that Defendant was not prejudiced by the delay.

Plaintiff bears the burden of showing a "valid reason for delay" warranting an extension of time to effect service. *Mann v. Castiel*, 681 F.3d 368, 375 (D.C. Cir. 2012) (internal quotation marks and citation omitted). The D.C. Circuit has found good cause for failure to effect timely service in three circumstances. The first is when "outside factor[s]"—such as a defendant

evading service or concealing a defect in service—contributed to the service failure. *Id.* at 374 (quoting *Lepone–Dempsey v. Carroll Cnty. Comm'rs*, 476 F.3d 1277, 1281 (11th Cir. 2007)). Second, "courts will be lenient towards a *pro se* plaintiff who makes honest mistakes." *Klayman v. Obama*, 125 F. Supp. 3d 67, 77 (D.D.C. 2015); *see also Morrissey v. Mayorkas*, 17 F.4th 1150, 1160 (D.C. Cir. 2021). Third, good cause exists where a statute of limitations would bar refiling the action. *Mann*, 681 F.3d at 376; *see also* FED. R. CIV. P. 4(m) (advisory committee's note). And even if a plaintiff has not established good cause, the court may still—in its discretion—permit late service. *See Henderson v. United States*, 517 U.S. 654, 658 n. 5 (1996); *Shaw v. D.C.*, No. CIV.A. 05-1284 (CKK), 2006 WL 1371681, at *8 (D.D.C. May 15, 2006); *Wilson*, 332 F. Supp. 2d at 89–90; *see also Barot v. Embassy of the Repub. of Zambia*, 785 F.3d 26, 29 (D.C. Cir. 2015) (instructing that "when there exists a reasonable prospect that service can be obtained," an extension of time, rather than dismissal, is appropriate).

Upon consideration of the record, the court finds that Plaintiff's seven-day delay in serving Defendant does not warrant dismissal for three reasons. First, at the time Plaintiff initiated her lawsuit, she was proceeding *pro se*, which entitles her to "latitude" to correct her mistake. *Mann*, 681 F.3d at 376 (noting that district courts typically afford *pro se* litigants "latitude" to correct deficient service of process). Second, she contends that her delay was caused—at least in part—by her incapacitation from illness, an assertion she supports with a Verification of Treatment form signed by Doctor Jessica Wyant, confirming that Plaintiff underwent medical treatment on February 1, 2020, and indicating that she should be "excuse[d]," presumably from work, until February 5, 2020. *See* ECF No. 5 at 2. And third, "the court has no indication that granting [Plaintiff] extra time to perfect service works great prejudice on" Defendant, especially here, where Plaintiff remedied the defect soon after the deadline, and

Defendant has since entered an appearance and filed a motion to dismiss. *Wilson*, 332 F. Supp. 2d at 89; *see also M.K. v. Tenet*, 99 F. Supp. 2d 12, 17–18 (D.D.C. 2000) (granting plaintiff additional time to serve unknown CIA defendants despite plaintiff's failure to do anything by way of service for eight months—twice the statutory limit). The court does not look lightly on failures to comply with the notice requirements of Rule 4, but in this case, the court finds that Plaintiff's untimely service does not warrant dismissal.

### B. Discrimination Claims Related to Defendant's 2015 Hiring Decision

Plaintiff alleges that Defendant discriminated against her on the basis of gender, religion, race, and national origin for failing to promote her in July 2015. Am. Compl. ¶¶ 25, 45, 47, 55; *accord id.* ¶¶ 60, 65. Defendant argues that any claims based on her non-promotion in 2015 must be dismissed because they are untimely. Def. Mot. at 7–8. The court agrees.

Under Title VII, a plaintiff must exhaust their administrative remedies before filing a lawsuit. *See e.g.*, *Mayers v. Laborers' Health & Safety Fund of N. Am.*, 478 F.3d 364, 367–68 (D.C. Cir. 2007). Generally, a plaintiff must file a charge with the EEOC within 180 days of the alleged discriminatory action. 42 U.S.C. § 2000e-5(e)(1). If the locality has a work-sharing agreement with the EEOC, as does the District of Columbia, this deadline extends to 300 days. 29 C.F.R. § 1601.13(a)(4)(ii) (2020).

Plaintiff filed her first EEOC Charge on August 21, 2018, alleging discrimination based on gender and religion. *See* Am. Compl. ¶ 28; Def. Mot., Ex. 1. Thus, she timely exhausted her administrative remedies as they relate to alleged gender and religion discrimination that occurred on or after October 25, 2017 (*i.e.*, 300 days before she filed her charge), but not discrimination alleged to have occurred before that date. Defendant has therefore met its burden of showing that its 2015 hiring decision is not actionable. *See Singletary v. District of Columbia*, 351 F.3d

519, 526 (D.C. Cir. 2003) ("'[D]iscrete discriminatory acts' . . . 'are not actionable if time barred, even when they are related to acts alleged in timely filed charges.'") (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002)).

Once a defendant has pleaded a failure either to exhaust administrative remedies or to comply with statutory time limits, the burden shifts to the plaintiff to make the case that dismissal is not warranted. *Bowden v. United States*, 106 F.3d 433, 437 (D.C. Cir. 1997). Equitable estoppel, which "prevents a defendant from asserting untimeliness where the defendant has taken active steps to prevent the plaintiff from litigating in time," may apply to discrimination cases. *See Currier v. Radio Free Eur./Radio Liberty, Inc.*, 159 F.3d 1363, 1367 (D.C. Cir. 1998) (emphasis removed). To invoke this doctrine, a plaintiff must provide evidence that the defendant engaged in some form of "affirmative misconduct" that prevented a timely filing. *Barbett v. Logistics Application, Inc.*, 845 F. Supp. 2d 164, 167 (D.D.C. 2012). A court must exercise its equitable power "only in extraordinary and carefully circumscribed instances." *Mondy v. Sec'y of the Army,* 845 F.2d 1051, 1057 (D.C. Cir. 1988).

Plaintiff has not alleged that Defendant took any active steps to prevent her from filing her EEOC Charge within 300 days of its 2015 hiring decision. In fact, in her opposition to Defendant's motion, Plaintiff did not respond to Defendant's timeliness argument and instead confined her arguments to conduct that occurred well after the 2015 hiring decision. *See* Pl. Opp'n at 6–12 (arguing that Defendant discriminated against her by shutting her out of the opportunity to apply for the January 2018 Grade 15 position and by not hiring her for one of the four August 2019 job openings).

The court nonetheless considers whether Defendant should be equitably estopped from asserting a timeliness defense as to its 2015 hiring decision and finds that it should not. First, the

statements made by Gillis and Robinson sometime between July 2015 and October 2016, conceding that the male applicant hired for the 2015 job was not qualified, and that they "would look into the problem and get back to" Plaintiff, do not constitute "active steps" that would have "prevented" Plaintiff from filing an EEOC Charge. *See Currier*, 159 F.3d at 1368 (D.C. Cir. 1998) (noting that supervisor's statements that hiring decision was being reconsidered and promising a "fair and impartial investigation" were inadequate support for equitable estoppel). Second, the "pendency of a grievance," such as the one Plaintiff filed with DCHR in October 2016, likewise "does not toll the running of the limitations period." *Del. State Coll. v. Ricks*, 449 U.S. 250, 261 (1980). "This principle is based in part on 'the independence of Title VII remedies from other pre-existing remedies available to an aggrieved employee.'" *Foster v. Gonzales*, 516 F. Supp. 2d 17, 24 (D.D.C. 2007) (quoting *Int'l Union of Elec., Radio & Mach. Workers v. Robbins & Myers, Inc.*, 429 U.S. 229, 236 (1976). *See also Dudley v. Wash. Metro. Area Transit Auth.*, 924 F. Supp. 2d 141, 158 (D.D.C. 2013) (explaining that if filing an internal grievance alone were sufficient, "then requiring an EEOC Charge would be superfluous").

Third, Plaintiff claims that on July 13, 2017, an unnamed employee told her that as a correction and resolution for the allegedly discriminatory 2015 hiring decision, the position would be re-posted, and Plaintiff would be able to apply, *see* Am. Compl. ¶ 24, a statement that, according to Plaintiff, proved to be false, *see id.* ¶¶ 25–26. To be sure, "an employer's affirmatively misleading statements that a grievance will be resolved in the employee's favor can" warrant equitable estoppel. *Currier*, 159 F.3d at 1368. And so, to the extent Defendant's statement was the type of "affirmative misconduct" that "lulled" Plaintiff into inaction, *Mondy*, 845 F.2d at 1057, Defendant could not raise the affirmative defense of untimeliness. *See Glus v. Brooklyn E. Dist. Terminal*, 359 U.S. 231, 232 (1959) ("[N]o man may take advantage of

his own wrong."). But at the time Plaintiff claims the employee made this statement, the 300–day period had already elapsed. In other words, the employee's July 13, 2017, statement did not prevent Plaintiff from filing her EEOC Charge within 300 days of the 2015 hiring decision, and thus it does not justify equitable estoppel in this case.

Therefore, based on the record before it, the court concludes Defendant's 2015 hiring decision cannot sustain a standalone discrimination claim.[2]

C. **Discrimination Claims Related to 2018 Job Post and 2019 Hiring Decision**

Plaintiff alleges that in January 2018, Defendant posted a job opening for a Grade 15 Bridge and Tunnel Supervisor to prevent her—a Grade 13 employee—from applying because of her gender, religion, race, and national origin. *Id.* ¶¶ 25–27; 55; 60; 65. She also alleges that in 2019 she applied for and was denied one of four available positions because of her religion, race, national origin, and age.

As an initial matter, the court notes that Plaintiff's 2018 EEOC Charge alleged discrimination based on gender and religion alone. *See* Def. Mot. at Ex. 1. Accordingly, regarding the 2018 job post, Plaintiff has exhausted administrative remedies for her gender and religion discrimination claims, but not for her race and national origin discrimination claims. *See Williams v. Spencer*, 883 F. Supp. 2d 165, 174 (D.D.C. 2012) (dismissing race discrimination claim because plaintiff did not identify "race" on her EEOC Charge and thus failed to exhaust

---

[2] While unexhausted allegations of discriminatory acts cannot serve as the basis for a Title VII claim, they can support a separate, charged discriminatory act that forms the basis of a Title VII claim. *Morgan*, 536 U.S. at 113. In other words, Plaintiff's allegations of discrimination that occurred before October 25, 2017, cannot sustain a discrimination claim, but can serve as evidence in support of claims for which she exhausted her administrative remedies. *See id.*; *see also Ellison v. Napolitano*, 901 F. Supp. 2d 118, 128 (D.D.C. 2012) (concluding that employee could use prior, unexhausted discrimination claims as background evidence in support of a timely claim).

administrative remedies as to that claim). The court will therefore grant dismissal of Plaintiff's race and national origin discrimination claims arising out of the 2018 job posting.

The court next considers whether Plaintiff's allegations regarding the 2018 job posting are sufficient to state claims for gender and religion discrimination, and whether her allegations regarding the 2019 hiring decision are sufficient to state claims for religion, race, and national origin discrimination.

Courts examine discrimination claims brought under Title VII using the burden-shifting framework announced in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Badibanga v. Howard Univ. Hosp.*, 679 F. Supp. 2d 99, 102 (D.D.C. 2010). That framework requires a plaintiff to first state a *prima facie* case, showing that: "(1) [the plaintiff] is a member of a protected class, (2) [she] suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination." *Stella v. Mineta*, 284 F.3d 135, 145 (D.C. Cir. 2002) (internal citation omitted).

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff need not plead all elements of a *prima facie* case. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510–12 (2002). At this stage, a complaint need only "provide enough factual heft to show a plausible entitlement to relief," *Winston v. Clough*, 712 F. Supp. 2d 1, 13 (D.D.C. 2010), meaning that it contains "enough facts to [nudge] a claim to relief . . . across the line from conceivable to plausible," *Twombly*, 550 U.S. at 570. Pleadings in Title VII cases have sufficient "factual heft" when they allege that "(i) the plaintiff suffered an adverse employment action and (ii) because of [her] race, color, or religion, gender or national origin." *Bryant v. Pepco*, 730 F. Supp. 2d 25, 30 (D.D.C. 2010) (citing *Brady v. Off. of the Sergeant at Arms*, 520 F.3d 490, 493 (D.C. Cir. 2008)). And in evaluating whether a plaintiff has sufficiently pled facts that support an inference of discrimination at the motion to

dismiss stage, "there is a very low bar for alleging an inference of discrimination." *Sims v. Sunovion Pharms, Inc.*, Civil Action No. 17- 2519 (CKK), 2019 WL 690343, at *8 (D.D.C. Feb. 19, 2019).

Plaintiff's allegations regarding both the 2018 job post and 2019 hiring decision have sufficient "factual heft" to clear the Rule 12(b)(6) bar. First, she has alleged adverse employment actions. *See Douglas v. Donovan*, 559 F.3d 549, 552 (D.C. Cir. 2009) ("[I]f an employee is denied the opportunity to compete for a promotion, she has suffered an adverse employment action; we do not inquire whether she would have received the position but for the discrimination.").

Second, she has alleged facts to support an inference that both actions were discriminatory. She claims that she first applied for and was wrongly turned down for the 2015 Grade 14 position because of her gender and religion, and that DCHR conceded that the non-Muslim male applicant selected for the position was not qualified. Am. Compl. ¶ 24. Rather than repost the position as a Grade 14 position, Defendant posted the position as a Grade 15 position, allegedly to exclude Plaintiff from being able to apply because of her gender and religion. *Id.* ¶ 27 (arguing that the change to the job posting "solidified the ongoing discrimination" against Plaintiff). She provides factual context regarding the 2015 position, *id.* ¶ 15, her qualifications, *id.* ¶¶ 16–18, her subsequent internal grievances, *id.* ¶¶ 21–25, and the 2018 position, *id.* ¶ 25. Regarding her non-selection for the 2019 position, Plaintiff alleges that she was qualified for the position but was "passed over for less qualified applicants for discriminatory reasons, because of her religion, race, national origin, and age." *Id.* ¶ 40. And she again provides factual context regarding the job position, timing of her application, and qualifications. *Id.* ¶¶ 32, 35–36. These facts, when accepted as true, create a plausible inference

of discrimination and the court will deny Defendant's motion to dismiss Plaintiff's gender and religion discrimination claims arising out of the 2018 job posting and Plaintiff's gender, religion, race, and national origin discrimination claims arising out of the 2019 hiring decision.

### D. Retaliation Claim

Title VII's anti-retaliation provision makes it unlawful for "an employer [to] 'discriminate against' an employee . . . because that individual 'opposed any practice' made unlawful by Title VII or 'made a charge, testified, assisted, or participated in' a Title VII proceeding or investigation." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 56 (2006) (quoting 42 U.S.C. § 2000e–3(a)). To establish a *prima facie* case of retaliation, Plaintiff must show that: (1) she engaged in activity protected by Title VII, (2) her employer took an adverse employment action against her, and (3) the adverse action was causally related to the exercise of those rights. *Taylor v. Small*, 350 F.3d 1286, 1292 (D.C. Cir. 2003). However, a retaliation claim "faces a low hurdle at the motion to dismiss stage," *Winston*, 712 F. Supp. 2d at 11, and Plaintiff need not plead each element of her *prima facie* case, *see Swierkiewicz*, 534 U.S. at 515.

"Because causation is often the most difficult element to show in advance of discovery, courts generally rely on the length of time between the protected activity and the adverse action to determine whether causation has been sufficiently pled at the motion to dismiss stage." *Bryant*, 730 F. Supp. 2d at 31 (citing *Holcomb v. Powell*, 433 F. 3d 889, 903 (D.C. Cir. 2006)). "If the adverse action occurs immediately following the protected activity then the court is free to infer causality; if the adverse action happens many months or years later courts are less likely to allow such an inference." *Id.* at 32 (citing *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273–74 (2001)). When relying on temporal proximity alone to demonstrate causation, there is no bright-line rule, although three months is perceived as approaching the outer limit. *See Hamilton*

*v. Geithner*, 666 F.3d 1344, 1357–58 (D.C. Cir. 2012); *see also Nunnally v. Dist. of Columbia*, 243 F. Supp. 3d 55, 67 (D.D.C. 2017) ("The D.C. Circuit has held that ten months, eight months, and two and a half months were not close enough for temporal proximity.") (citations omitted).

Here, Plaintiff alleges two protected activities: her 2016 grievance regarding the 2015 non-promotion and her August 2018 EEOC Charge. *See* Am. Compl. ¶¶ 22, 28. She alleges that because she engaged in those protected activities, she was "shut out of" the 2019 position. *Id.* ¶ 70. Causation "may be inferred—especially at the pleading stage—when the retaliatory act follows close on the heels of the protected activity," but that is not the case here. *Smith v. De Novo Legal, LLC*, 905 F. Supp. 2d 99, 104 (D.D.C. 2012). Neither of these complaints—filed four years and one year before her non-selection in August 2019, respectively—has temporal proximity to the alleged adverse action. Nor does Plaintiff allege any other facts to support an inference of causation. *See* Am. Compl. ¶ 70 (making conclusory assertion that 2019 non-selection "was done in retaliation for her continued complaints of discrimination"). Therefore, Plaintiff has failed to state a valid retaliation claim.

## IV.   CONCLUSION

For the reasons set forth above, the court will GRANT IN PART and DENY IN PART Defendant's motion. The court will GRANT Defendant's motion to dismiss Plaintiff's discrimination claims arising out of the 2015 hiring decision, Plaintiff's race and national origin discrimination claims arising out of the 2018 job posting, and Plaintiff's retaliation claim. The court will DENY Defendant's motion to dismiss as to all other claims.

Date:  September 13, 2022

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge