## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **AMAL AZZAM**, | |
| Plaintiff, | |
| v. | Case No. 19-cv-03365 (TSC) |
| **DISTRICT OF COLUMBIA**, | |
| Defendant. | |

## MEMORANDUM OPINION

Plaintiff Amal Azzam brings this case against her employer, the District of Columbia Department of Transportation ("DDOT"), alleging violations of Title VII of the Civil Rights Act of 1964, as amended, 42.U.S.C. § 2000e, *et seq*. ("Title VII"), the Civil Rights Act of 1991, 42 U.S.C. § 1981a, and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623(a). Plaintiff alleges discrimination on the basis of gender, religion, national origin, and age. Defendant has moved for summary judgment. Def.'s Mot. for Summ. J. ("Def.'s MSJ"), ECF No. 43.

For the reasons that follow, the court will DENY Defendant's motion for summary judgment.

## I.       BACKGROUND

### A.  Factual Background

Plaintiff is a 56-year-old Egyptian Muslim woman employed by DDOT as a Civil Engineer.  Def.'s MSJ Ex. 1, Azzam Dep. Tr. 10:8–17, 21:20–22, 51:17–52:9.  The facts of this case are set forth in the court's prior Opinion dated September 13, 2022. *Azzam v. D.C.*, No. 19-

CV-3365 (TSC), 2022 WL 4182187, at *1–2 (D.D.C. Sept. 13, 2022). For convenience, they are summarized below.

### 1. 2018 Job Posting

In July 2015, Plaintiff, then a Grade 13 level employee, applied for a Grade 14 Supervisory Civil Engineer position at DDOT. Pl.'s Opp'n to Mot. for Summ. J. ("Pl.'s Opp'n") Ex. 2, D.C. Human Resources ("DCHR") Response dated July 13, 2017 at 1, ECF No. 45-3. Plaintiff was not selected for the position, despite receiving the highest score on DDOT's "interview and certification scoring system." *Id.* Instead, it is undisputed that DDOT selected a non-Muslim male, who turned out to lack a "professional license required" for the job. *Id.*; Def.'s MSJ Ex. 2 at 4, ¶ 3. Consequently, DDOT rescinded the job offer and moved the selectee to another position. Def.'s MSJ Ex. 2, at 4, ¶ 3.

In October 2016, Plaintiff filed a grievance with DCHR regarding her non-selection for the 2015 position. Pl.'s Opp'n Ex. 2 at 1. On July 13, 2017, DCHR agreed that the male selectee was not qualified for the position and informed her that the position would be re-posted and she would "have an opportunity to reapply for the position." *Id.* at 1–3. Plaintiff repeatedly asked DDOT personnel when the reposting would occur and was assured that the job would be reposted. Pl's Opp'n Ex. 3, ECF No. 45-4; *id.* Ex. 4 ¶¶ 5–10, ECF No. 45-5. DDOT never reposted the Grade Level 14 Engineer Position. Def.'s MSJ Ex. 1, Azzam Dep. Tr. 31:8–22; 32:1–22; 33:1–6.

Instead, in January 2018, DDOT posted a Grade 15 level Engineer Position, with a requirement that all applicants have at least one year of experience performing Grade 14 level work. Pl.'s Opp'n Ex. 5, ECF No. 45-6.[1] In particular, the posting stated: "To be creditable, at

---

[1] Plaintiff's Exhibit 5 of the Grade 15 job posting does not exactly match Defendant's Exhibit 6 of the Grade 15 posting. *Compare* Pl.'s Opp'n Ex. 5, ECF No. 45-6 *with* Def.'s MSJ Ex. 6.

least one (1) year of specialized experience must have been equivalent to at least the next lower grade level in the normal line of progression for the occupation in the organization." *Id*. at 2.  At the time of the posting, Plaintiff was still a Grade 13 employee.  Pl.'s Opp'n Ex. 4, Decl. of Amal Azzam ("Azzam Decl.") ¶ 9, ECF No. 45-5.  Plaintiff did not apply for the position.  Def.'s MSJ Ex. 3, Decl. of Tomas MacCutcheon ("MacCutcheon Decl.") ¶ 11.  DDOT's hiring policy requires that the highest scoring applicant be selected for a competed position.  *Id*. ¶ 13.  Consequently, Plaintiff was neither considered nor selected for the position, which was ultimately filled by a non-Muslim male.  Def.'s MSJ Ex. 2, at 4, ¶ 3.

### 2.    2019 Nonselection

In August 2019, Plaintiff applied for one of four newly available positions as Project Manager at the Grade 14 level.  Def.'s MSJ Ex. 4, Decl. of Amanda Stout ("Stout Decl.") ¶¶ 5, 16.  As part of the online application process, Plaintiff answered a series of questions and received an "eRecruit" score of 110, which placed her in the top of the applicant pool.  *Id*. ¶¶ 17–18; Def.'s MSJ Ex. 5.  She was interviewed by a panel in the first round of interviews and asked the same questions as the other applicants.  Stout Decl. ¶¶ 20, 23.  The panel members scored the applicants based on their interview responses and combined those scores with the eRecruit scores to determine which applicants would proceed to the second round of interviews.  *Id*. ¶ 25.  Plaintiff's combined score was 299; candidates selected for the second interview had combined scores of 329 to 394.  *Id*. ¶¶ 26–27.  Nine of the highest scoring applicants were selected for a second-round interview; Plaintiff was not among them.  *Id*. ¶ 27.  Each of the four selected candidates were non-Muslim and under the age of 40.  Pl.'s Opp'n Ex. 4, Azzam Decl. ¶¶ 15–16.

---

Given that neither party has objected to the other's exhibit, the court assumes that these two exhibits apply to the same 2018 position at issue here.

### B. Procedural Background

The procedural background in this case is also set forth in this court's 2022 Memorandum Opinion. *Azzam*, 2022 WL 4182187, at *1–2. On July 7, 2020, Plaintiff filed an Amended Complaint, alleging that Defendant discriminated against her on the basis of her gender, religion, race, and national origin in violation of Title VII, by failing to select her for the Grade 14 Supervisory Civil Engineer position in 2015, and selecting instead a significantly less qualified non-Egyptian and non-Muslim male. Plaintiff alleges that Defendant further discriminated against her by re-posting the position in 2018 as a Grade 15 position for which Defendant knew she could not qualify. Am. Compl. ¶¶ 44–68, ECF No. 15. She also alleges that Defendant's refusal to select her for any of the four posted 2019 positions constituted discrimination based on religion, race and national origin, as well as retaliation for her earlier EEOC complaints, all in violation of Title VII, and age discrimination in violation of the ADEA. *Id*. ¶¶ 55, 60, 65, 69–80.

Defendant moved to dismiss the Amended Complaint, arguing that it was untimely, that Plaintiff had failed to state a plausible claim for discrimination based on gender, religion, race, or national origin, and that her retaliation claim failed for lack of any inference of causation. ECF No. 16. Defendant did not move to dismiss Plaintiff's age discrimination claim.

By Memorandum Opinion dated September 13, 2022, this court granted Defendant's motion in part and denied it in part. Mem. Op, ECF No. 22; *Azzam*, 2022 WL 4182187, at *1. The court denied Defendant's request for dismissal based on a seven-day delay in serving Defendant with the original Complaint. The court concluded that Plaintiff's *pro se* status, her "incapacitation from illness" for a period of time, and the lack of any prejudice to Defendant from such a short delay warranted granting Plaintiff some "latitude" to correct her deficient service of process. *Azzam*, 2022 WL 4182187, at *3–4.

The court dismissed Plaintiff's discrimination claims arising out of the 2015 hiring decision on the grounds that she had failed to timely exhaust her administrative remedies. *Id.* at \*4. Plaintiff had filed her claim of discrimination well past the 300-day deadline. *Id*. at \*5. The court concluded that Plaintiff had failed to demonstrate any circumstances that warranted the application of the doctrine of equitable estoppel. *Id.* The court pointed out however, that while "unexhausted allegations of discriminatory acts cannot serve as the basis for a Title VII claim, they can support a separate, charged discriminatory act that forms the basis of a Title VII claim[,]" which has been properly administratively exhausted. *Id*. at \*5, n.2, *quoting Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002).

Defendant also moved to dismiss Plaintiff's claims regarding the 2018 job posting and the 2019 nonselection. With respect to the 2018 job posting, the court found that Plaintiff had exhausted her administrative remedies regarding her gender and religion discrimination claims, but not on the basis of race and national origin. Consequently, the court granted the motion to dismiss the latter two claims. *Azzam*, 2022 WL 4182187, at \*5.

With respect to both the 2018 job posting and the 2019 nonselection, which Defendant argued should be dismissed for failure to state a claim, the court concluded that Plaintiff had pled sufficient facts to support an inference of discrimination regarding both actions. In connection with the 2018 job posting, Plaintiff had pled that she was wrongly not selected for the 2015 Grade 14 position despite her qualifications, a nonqualified, non-Egyptian and non-Muslim male applicant was selected, and in 2018, Defendant knowingly posted the position at the Grade 15 level to keep Plaintiff from being able to apply. *Id.* at \*6. In connection with the 2019 nonselection, Plaintiff had pled that she was qualified for the position but was not selected for discriminatory reasons and, instead, less qualified applicants were selected. *Id.*

Finally, the court dismissed Plaintiff's claim for retaliation, finding that none of Plaintiff's discrimination complaints were made in sufficient temporal proximity to the alleged adverse actions forming the basis of her Amended Complaint, and thus there was no reasonable inference of retaliation. *Id.* at *7.

## II.    LEGAL STANDARD

Under Fed. R. Civ. P. 56, a court will grant summary judgment to a moving party who has demonstrated that there is no genuine issue as to any material fact and thus the moving party is entitled to judgment as a matter of law. A "material fact" is one that might affect the outcome of the lawsuit, and a dispute about a material fact is considered "genuine" if the evidence for that fact from the nonmoving party could persuade a reasonable jury to rule in the nonmoving party's favor. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986). A court determines which facts are "material" by looking at the substantive law on which each claim rests. *Id.*

The moving party bears the burden of initially demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The nonmoving party may defeat this showing by pointing to facts in the record that constitute more than a mere "scintilla of evidence," demonstrating "there is a genuine issue for trial." *Id*. at 324; *Anderson*, 477 U.S. at 252. In deciding a motion for summary judgment, the court must accept the non-moving party's evidence as true and draw all justifiable inferences in that party's favor. *Anderson*, 477 U.S. at 255.

Under Title VII, it is unlawful to "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1); *id*. § 2000e-16(a) ("All personnel actions affecting

employees or applicants for employment" in the federal government "shall be made free from discrimination based on race, color, religion, sex, or national origin."). Under the ADEA, "[a]ll personnel actions affecting employees or applicants for employment who are at least 40 years of age . . . shall be made free from any discrimination based on age" in executive agencies. 29 U.S.C. § 633a(a).

To state a claim under either Title VII or the ADEA, a plaintiff may offer direct or indirect evidence of discrimination. When the evidence is indirect, the familiar *McDonnell Douglas* framework applies. *See Hall v. Giant Food, Inc.*, 175 F.3d 1074, 1077 (D.C. Cir. 1999) (applying the *McDonnell Douglas* framework to Title VII and ADEA claims). Under *McDonnell Douglas*, a plaintiff must make a prima facie showing of discrimination. In a disparate treatment case, this requires showing that the plaintiff: (1) belongs to a protected class, (2) experienced an adverse employment action, and (3) the adverse employment action yields an inference of discrimination. *See George v. Leavitt*, 407 F.3d 405, 412 (D.C. Cir. 2005) (internal quotation marks and citation omitted). The burden then shifts to the defendant to offer "legitimate, non-discriminatory reason[s] for the challenged employment decision." *DeJesus v. WP Co. LLCX*, 841 F.3d 527, 532 (D.C. Cir. 2016). If the defendant does so, the burden reverts to the plaintiff to prove that discrimination was the real reason for the adverse employment action. *See id*. at 532–33.

In cases alleging discrimination, the court must proceed cautiously. Employment discrimination cases often "deal with elusive concepts of motive and intent." *Washington v. White*, 231 F. Supp.2d 71, 82 (D.D.C. 2002), *quoting Ross v. Runyon*, 859 F. Supp. 15, 21–22 (D.D.C. 1994). "Thus, it is often difficult for a plaintiff to offer direct proof of an employer's discrimination." *Id.* Because summary judgment in Title VII cases is generally disfavored, courts must be "extra-careful to view all the evidence in the light most favorable" to the plaintiff. *Id.*

## III.    ANALYSIS

### A.  2018 Job Posting[2]

As noted above, the 2018 job posting was for a Grade 15 supervisory engineer manager position.  *See* Section (I)(A)(1).  It is undisputed that Plaintiff was made aware of this posting and did not apply for the position.  *See id.*  It is also undisputed that DDOT's hiring policy requires that only applicants may be considered for a posted position.  *See id*.

Defendant claims that because Plaintiff failed to apply for the position, she cannot claim that her nonselection was discriminatory.  Def.'s MSJ at 12–14.  Plaintiff responds that she was ineligible to apply for the position because Defendant posted the job with a requirement that she could not meet, namely, one year of experience at the Grade 14 level.  Pl.'s Opp'n at 9–10. Defendant is correct that ordinarily a plaintiff seeking to raise a nonselection claim must demonstrate not only that she was qualified for the job at issue but also that she applied for the position.  *See, e.g., Lathram v. Snow*, 336 F.3d 1085, 1088 (D.C. Cir. 2003).  This, however, does not end the inquiry.  Plaintiff correctly points out that a cause of action exists for being denied the opportunity to apply for a position.  Pl.'s Opp'n at 9, *citing Douglas v. Preston*, 559 F.3d 549, 552 (D.C. Cir. 2009).  The D.C. Circuit has recognized that a Title VII plaintiff may still establish a prima facie case of discriminatory hiring without formally applying for a job opening, "as long as the plaintiff made every reasonable attempt to convey his interest in the job to the employer." *Cones v. Shalala*, 199 F.3d 512, 518 (D.C. Cir. 2000) (citation and internal quotation marks omitted).  Plaintiff has produced evidence showing that she expressed interest in the reposting of the 2015 job, which was later posted in the 2018 job announcement.  *See* Pl.'s Opp'n Ex. 3.  Indeed,

---

[2] This court previously concluded that Plaintiff exhausted her administrative remedies with respect to this claim only based on gender and religion, not on race and national origin.  *Azzam*, 2022 WL 4182187, at *5–6.

Defendant conceded that Plaintiff was interested in applying for the reposted position. *See* Pl.'s Opp'n Ex. 2 at 2.

Defendant does not dispute that when Plaintiff applied for the Grade 14 Engineer Position in 2015, she not only was deemed qualified, but she also attained the "highest" score. Pl.'s Opp'n Ex. 2 at 1. Notwithstanding this fact, Defendant hired a younger, non-Muslim male candidate who did not even possess what would seem to be the most basic of requirements for the job opening: the required license for the position. *See id.* Inexplicably, this seems to have been discovered only after DCHR initiated an investigation into Plaintiff's grievance. *See id.* Although this court previously dismissed Plaintiff's claim concerning the 2015 nonselection, it expressly noted that the circumstances surrounding the 2015 nonselection could be considered as evidence in support of a separate claim of discrimination that was properly before the court. *Azzam*, 2022 WL 4182187, at *5, n.2. Consequently, Defendant's repeated claim that the 2015 application process and subsequence grievance and resolution have no bearing on the 2018 job posting, *see* Def.'s Resp. to Opp'n to Mot. for Summ. J. ("Def.'s Resp.") at 2, ECF No. 46, is unavailing. Although Plaintiff cannot pursue the 2015 nonselection as a stand-alone claim, she certainly can point to the circumstances surrounding that nonselection as evidence of Defendant's state of mind in selecting Plaintiff for a higher-level position, especially given that Defendant concedes that higher-level position was a reposting of the 2015 position. *See* Pl.'s Opp'n Ex. 3 at 2.

Plaintiff argues that after her 2015 nonselection and successful grievance, Defendant decided to change the requirements of the 2015 job posting and reposted the position at a higher grade level, a Grade 15, with a requirement that Defendant knew Plaintiff could not meet, namely a year of experience at the Grade 14 level. *See* Pl.'s Opp'n at 9. This came after Plaintiff had been expressly told in 2017 that the 2015 position would be reposted, "at which time you will have an

opportunity to reapply for the position." Pl.'s Opp'n Ex. 2 at 2. Yet, despite that reassurance, Defendant never reposted the Grade 14 Engineer Position; it posted the Grade 15 position.

Defendant offers no explanation for why the 2015 Grade 14 level position was reposted in 2018 as a Grade 15 level position. *See* Def.'s Resp. at 2–3. Defendant simply argues that the 2018 job posting was public, and that Plaintiff had the required minimum of seven years of experience applying engineering principles, practices, or techniques. *See id* at 2. Defendant contends that Plaintiff's seven years of experience applying engineering principles was considered equivalent to one year of Grade 14 experience. Def.'s MSJ at 14, *citing* Def.'s Statement of Undisputed Material Facts ("Def.'s SUF") ¶ 14. But Defendant's Statement of Undisputed Material Facts says only that:

> The posting for Job ID 2468 identified the experience requirements for the position as a minimum of 7 years of experience applying engineering principles, practices, and techniques or an equivalent of 12 years of education, training, and experience sufficient to demonstrate that the applicant possesses the knowledge, skills, and abilities required to perform work of the position. [citation omitted].

Def.'s SUF ¶ 14, *citing* Def.'s MSJ Ex. 3, MacCutcheon Decl. ¶ 8; *see also* Def.'s MSJ Ex. 6 at 2.

Nothing in this statement indicates that this experience would be considered the equivalent to one year of Grade 14 level experience. Consequently, in light of the posting's express requirement that applicants have experience equivalent to one year at the Grade 14 level, an applicant might reasonably assume that the lack of any experience in the Grade 14 level was a disqualification from applying for the position. At the very least, whether such an assumption would have been reasonable enough to justify Plaintiff's decision not to apply for the position is a fact which must be decided at trial. Under such circumstances, Plaintiff's failure to apply for the position does not end her claim.

Assuming that Plaintiff reasonably concluded that she could not apply for the position, the inquiry turns to whether Plaintiff's failure to apply was the result of Defendant's discriminatory actions. The logical next question is why DDOT posted the position at the Grade 15 level, after assuring Plaintiff that the 2015 position would be reposted in a manner that would allow for her to apply for the position. *See* Pl.'s Opp'n Ex. 2 at 2. Plaintiff points to the circumstances surrounding her nonselection for the 2015 position as suggestive of DDOT's discriminatory intent to prevent her from advancing to a higher-level position, especially given that Defendant ultimately hired a non-Muslim male without a professional license to do the job. *See* Section (I)(A)(1)–(2). While there could be nondiscriminatory reasons for why the 2018 reposting was done at the Grade 15 level, instead of the previously posted Grade 14 level, Defendant offers none. *See* Def's Resp. at 2–3. As this Circuit has previously observed, "silence is a dangerous tactic at best; here it proves fatal." *Taylor v F.D.I.C.*, 132 F.3d 753, 763 (D.C. Cir. 1997). Plaintiff has raised sufficient evidence of pretext that Defendant's motion for summary judgment on this issue must be denied.

### B. 2019 Nonselection

In August 2019, Plaintiff applied for one of four posted DDOT Grade 14 level positions for Project Manager. Stout Decl. ¶ 16. The parties do not dispute that in the initial stage of the application process, Plaintiff received a DCHR eRecruit score of 110, which tied her with several other candidates for the highest score. *Id.* ¶ 18; Def.'s MSJ at 9; Def.'s MSJ Ex. 5 at 146. Plaintiff was then included in the first round of interviews, in which applicants were asked the same questions which included the same prompts and hypothetical scenarios. Stout Decl. ¶¶ 20, 23–24. Plaintiff received a score of 189 in her interview, which gave her a combined score of 299. *Id.* ¶¶ 23–26. Defendant points out that the nine applicants who were selected for a second round of interviews received a combined score ranging from 329 to 394. Def.'s MSJ at 10; Stout Decl.

¶ 27.  Because Plaintiff's score was not in that range, she was not accorded a second interview and was no longer considered for selection.

Defendant states that the highest scoring applicants after the second round of interviews were offered one of the four positions.  Def.'s SUF ¶ 45.  When one of the applicants, a male, declined the position, it was offered to the next highest scoring applicant, a female.  *See id.* ¶ 47.  The remaining selectees were women.  *See* Def.'s MSJ at 16.  Defendant contends that Plaintiff has failed to show that any of the selected candidates "fell outside of her protected class."  *Id.*  But Defendant concedes that one of the first selectees was male.  *See* Stout Decl. ¶ 30.  Only when he declined the job was a female selected as his replacement.  *See id*. ¶ 31; *see* Def.'s SUF ¶ 47.

The selection of a person the same gender as the plaintiff does not guarantee summary judgment on a gender claim.  Although the selection of a person within the same protected class may "cut[] strongly against any inference of discrimination," this "does not mean that a jury could never infer discrimination where the plaintiff was replaced by a member of the same protected class." *Murray v. Gilmore*, 406 F.3d 708, 715 (D.C. Cir. 2005).  Moreover, in this case, all the selectees were younger than Plaintiff and non-Muslim.  Pl.'s Opp'n Ex. 4 ¶ 15.   Defendant concedes that Plaintiff has raised claims of discrimination based on race, religion, national origin and age with respect to this nonselection, Def.'s MSJ at 1, and therefore these claims are unaffected by Defendant's selections.

Defendant argues that based on the fact that the selectees scored higher than Plaintiff after the first round of interviews, there can be no inference of discrimination, especially because the interview panel did not ask any applicants for their age, gender, or religion and allegedly did not consider such factors in their selection process.  *Id.* at 10; *see* Def.'s SUF ¶ 50.  Defendant cites no

authority for the proposition that scores alone, regardless of any other evidence, can defeat any inference of discrimination in a selection process. *See* Def.'s MSJ. at 9–10, 15–17.

Moreover, a score alone here actually raises an inference of discrimination. Plaintiff tied for the top e-Recruit score in the first phase of the selection process and scored higher than the male initially selected for the position. *Compare* Def.'s MSJ. Ex. 5 (male selectee Jonathan Rogers received an e-Recruit score of 100) *with* Stout Decl. ¶ 18 (Plaintiff received an e-Recruit score of 110). Notwithstanding her high score, Plaintiff failed to score in the top nine applicants after her interview, thereby making her ineligible for a second interview. Stout Decl. ¶ 27. Defendant offers no reason for why Plaintiff's interview score was low enough to keep her out of the second round of interviews. *See* Def.'s MSJ at 14-19; Def.'s Resp. at 3–6. Plaintiff correctly argues that the reason for her lower interview score raises a genuine issue of material fact. It is not enough to simply state, as Defendant does, that all applicants were asked the same questions and were not asked about their protected characteristics. *See* Def.'s MSJ at 15; Def.'s Resp. at 5. Defendant must show why Plaintiff warranted an interview score that was low enough to preclude her from a second interview. Defendant's failure to address this question precludes summary judgment on this issue.

### C.  Plaintiff's Request for Discovery is Denied Without Prejudice

In Plaintiff's opposition to summary judgment, she requests discovery pursuant to Fed. R. Civ. P. 56(d). Pl.'s Opp'n at 4–5. She argues that following the close of discovery, Defendant represented that it had "recently identified additional documents relating to Azzam's claims arising from a 2018 job posting that need to be produced and reviewed before finalizing and filing the motion for summary judgment." Pl.'s Opp'n at 4; ECF No. 42-1 at 1. Defendant further represented that Azzam "will have an opportunity to review the documents through the District's

discovery supplement before the motion for summary judgment is filed." ECF No. 42-1 at 1; Pl.'s Opp'n at 4–5.

Defendant responds that discovery closed on November 16, 2024, prior to the close of discovery Plaintiff raised no issues regarding outstanding discovery, and Plaintiff failed to comply with Fed. R. Civ. P. 56(d), which requires a declaration or affidavit in support of a motion for discovery in response to a motion for summary judgment. *See* Def.'s Resp. at 7. Surprisingly, Defendant offers no response regarding its prior representation to this court that it had discovered additional documents which it intended to produce to Plaintiff prior to moving for summary judgment. *See id*. That representation was made on December 13, 2024, almost a month *after* discovery closed. ECF No. 42-1 at 1; Oct. 18, 2024 Min. Order (ordering discovery to close on November 16, 2024). Thus, Defendant's argument that Plaintiff failed to raise a concern regarding discovery before the discovery period ended is specious.

Although Defendant is correct that Fed. R. Civ. P. 56(d) requires a supporting declaration or affidavit for a discovery request in the middle of summary judgment briefing, Defendant's decision to rest on this omission and ignore its apparently unmet representation to this court is disingenuous at best. Given the court's denial of Defendant's Motion for Summary Judgment, Plaintiff will be given an opportunity to move to reopen discovery if she so desires.

## IV.    CONCLUSION

For the reasons set forth above, the court will DENY Defendant's motion for summary judgment on Plaintiff's claims and DENY without prejudice Plaintiff's request for discovery pursuant to Fed. R. Civ. P. 56(d).


Date: September 24, 2025

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge